FILED
CLERK, U.S. DISTRICT COURT

JAN 10 2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____RS_____ DEPUTY

FULL NAME _____

COMMITTED NAME (if different)

U.S.P TUCSON
FULL ADDRESS INCLUDING NAME OF INSTITUTION

P.O. Box No: 24550.

#70487-018.
PRISON NUMBER (if applicable)

Tucson, Az 85734.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| D.D.<br><br>PLAINTIFF,<br><br>v.<br><br>UNITED STATES, BOP, MARTINI, et al<br><br>,<br>DEFENDANT(S). | CASE NUMBER **5:22-CV-00061-JGB-JC**<br>*To be supplied by the Clerk*<br><br>**CIVIL RIGHTS COMPLAINT PURSUANT TO** *(Check one)*<br>☐ 42 U.S.C. § 1983<br>☒ Bivens v. Six Unknown Agents 403 U.S. 388 (1971) |

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes ☒ No

2. If your answer to "1." is yes, how many? _____

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

N / A

---

a. Parties to this previous lawsuit:
Plaintiff _____

_____

Defendants _____

_____

b. Court _____

c. Docket or case number _____

d. Name of judge to whom case was assigned _____

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it
appealed? Is it still pending?) _____

f. Issues raised: _____

_____

_____

g. Approximate date of filing lawsuit: _____

h. Approximate date of disposition _____

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint
occurred? ☒ Yes   ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☒ Yes   ☐ No

If your answer is no, explain why not _____

_____

_____

3. Is the grievance procedure completed? ☒ Yes   ☐ No

If your answer is no, explain why not _____

_____

4. Please attach copies of papers related to the grievance procedure.   See page 2A.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff _____ D.D _____
<center>(print plaintiff's name)</center>

who presently resides at  PRISONER # 70487-018. U.S.P. TUCSON, P.O.BOX #: 24550, TUCSON, AZ 85734.
<center>(mailing address or place of confinement)</center>

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

UNITED STATES PENITENTIARY, VICTORVILLE, ADELANTO, CA.
<center>(institution/city where violation occurred)</center>

There are primarily the following grievance process that were initiated.

1. Remedy ID - 985910-F1   with U.S.P. Victorville.
2. Remedy ID - 990441- R1   with western region.
3. Incident ID # 3277823   with western region.
4. Remedy ID # 1048963 - R1   with western region.
5. TRT - WXR - 2021 - 05161

    Each of these contain plaintiff's full name. It was unclear on how to attach them to this application without actually and accidentally disclosing Plaintiff full name, because plaintiff intends to proceed anonymously. Therefore plaintiff has requested a sealed event to submit these under guidance from court.

on (date or dates) __MAY 18th 2019 - JANUARY 6th 2020.__ _____ _____
                (Claim I)                (Claim II)          (Claim III)

**NOTE:** You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant __UNITED STATES__ _____ resides or works at
      (full name of first defendant)

      _____
      (full address of first defendant)

      _____
      (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

__IN FTCA claims, United states is a rightfully named Defendant.__

2. Defendant __BOP, U.S.P. Victorville__ _____ resides or works at
      (full name of first defendant)

      _____
      (full address of first defendant)

      _____
      (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

__BOP is an agency of United states, a component of DOJ. U.S.P Victorville Adelanto CA facility its policies and profile are responsible for all the violations.__

3. Defendant __<First Name UNKNOWN> Martini__ _____ resides or works at
      (full name of first defendant)

      __U.S.P Victorville, Adelanto, CA.__
      (full address of first defendant)

      __Correctional Officer.__
      (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

__<FNU> Martini is a federal Correctional officer, All the duties discharged by him as correctional officer are acts performed under color of law__

4. Defendant _\<First Name Unknown\> Stencil_____ resides or works at
(full name of first defendant)

_U.S.P. Victorville, Adelanto, CA as operational LT._
(full address of first defendant)

_OIC Lt._
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Lt. FNU. Stencil was the OIC lieutenant in charge on July 31st, 2019.
He had the authority to resolve all operational issues.

5. Defendant _\<First Name Unknown\> Hoffman._____ resides or works at
(full name of first defendant)

_U.S.P. Victorville, Adelanto, CA as_
(full address of first defendant)

_Lieutenant._
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Lt. FNU. Hoffman was the lieutenant in charge on the night of July 27, 2019
- July 30, 2019. He had the authority to resolve all issues a LT is responsible for.

6. Defendant \<First Name Unknown\> Montgomery, resides or works at
U.S.P. Victorville, Adelanto, CA. as correctional officer.

7. Defendant \<First Name Unknown\> Zachary resides or works at
U.S.P. Victorville, Adelanto, CA as correctional officer.

8. Defendant \<First Name Unknown\> Moreno, resides or works at
U.S.P. Victorville, Adelanto, CA. initially as correctional officer and then was
property, R&D officer.

Defendants F.N.U Montgomery, FNU. Zachary, FNU Moreno are sued in their
individual and official capacity.
Each of their actions are adequately detailed in Factual Allegations.

9. Defendant &lt;First Name Unknown&gt; O'Brien resides or works at U.S.P. Victorville, Adelanto, CA as unit manager. She is sued in both her individual and official capacity.

As unit manager, especially of SHU, She had management, housing, resourcing and rehabilitation responsibilities of inmates in the unit.

10. Administrative Remedy Coordinator &lt;FNU&gt; &lt;LNU&gt; resides or works at U.S.P. Victorville, Adelanto, CA as Warden's Aid. The coordinator is sued in both individual and official capacity.

As Warden's Aid, Administrative Remedy Coordinator occupies the most prized position resolving remedies, sometimes its warden of the facility and at times it is his/her aid who assists in earlier resolution.

**D. CLAIMS***

<div align="center">

**CLAIM I**

</div>

The following civil right has been violated:

See pages 5A – 50

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

See page 5A – 50

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

# I.   INTRODUCTION

1.)     This is a prison suit brought against United States, its agency, Federal Bureau of Prisons (BOP), its U.S.P Victorville, Adelanto, CA (Victorville) facility, its agents acting under the color of law, encouraged by their supervisors in what can be the most inhumane and sadistic acts committed in perversion, inarguably considered cruel and unusual under the auspice of Eighth Amendment right to the United States Constitution.

2.)     These acts are directed against certain class of inmates that DD belongs to, preying upon their vulnerability, silence and ignorance. For eight long months DD suffered in the hands of these agents. DDs efforts to report these actors and shed light on their practice and actions were met with swift decisive use of force. Those effects even today lingers as nightmares and has given rise to this timely cause of action.

3)     This action attempts to expose (a) these correctional officers (c.o) engaging in unlawful behavior encouraged by their supervisors turning a blind eye in one such facility Victorville, and (b) a cleverly orchestrated profiteering scheme of classification and designation that results in disciplinary proceeding generating federal waste, devouring tax payers resources, unlawfully depriving inmates of their funds and resulting in clogging courts calenders.

4.)     Like numerous other inmates in the past and present, if this conduct goes unpunished or uncorrected, it will inevitably result in numerous other violations, pain and suffering. DD asks this court to enjoin further implementation of this scheme of classification and designation, for declaratory relief concerning the illegality of the resultant disciplinary proceeding and monetary and punitive damages for the pain and suffering DD had to endure based upon this scheme of classification, designation and disciplinary mechanism. Apart from violence inflicted in sadistic and pervert manner.

## II.   BACKGROUND.

5)     The staff at Designation and Sentencing Computation Center (DSCC) are responsible for designating and classifying an inmate at a initial Designation Facility (DFCL). The Case Management Coordinator (CMC) at the DFCL is responsible for monitoring and correcting erroneous designation of inmates. Together the DSCC and CMC have complete access to an inmate's PSR, INC, offense background and the DFCL character profile (Active/Non-Active Yard) to ensure an inmate is appropriately designated in a facility commensurate with the security and program needs through an objective and consistent system of classification as prescribed in PS100.08. If there is an erroneous classification by DSCC, CMC at the DFCL is responsible to inform DSCC of this error and offer reasons to correct the designation. See § Security Designation Procedure for new commitments. Any negligence or recklessness in this critical process of classification and Designation, guarantees an inmate suffering various violations of his rights and onslaught of assault, waste of federal and tax payers resources, unlawful deprivation of an inmates funds and wasting Judicial economy.

6)     When an inmate arrives at erroneously designated facility, he is presented with two options. (a) get assigned to general population, where he will be assaulted possibly with deadly weapons to near death or (b) consent to housing in SHU under punitive sanctions losing privileges viz: telephone, access to law library, legal activities, commissary, recreation and all other liberties afforded in general population. In violation of due process, without committing any offense, certainly without his fault. On top of this, inmate will be assessed penalties for making this choice. All the erroneously classified inmates choose the latter, simply because staying alive is important. The ignorant inmates who choose to get assigned to general population get assaulted, seek medical care and return to SHU if they are alive. Once this choice is made, they begin serving sentence in diplorable SHU conditions, vulnerable to onslaught of assaults awaiting them.

7.)     Unbeknownest to them, awaiting to prey upon them are Sexual abusers at the DFCL. These predators are notified of fresh preys by the C.O's. Upon economical arrangements, these predators are brought to SHU on frivolous infractions and are

Page 5B.

craftily paired with the preys in the cell, where the assaults take place. Most of these sexual assaults go unreported or are buried under the rug as frivolous complaints. Generally because the victim has committed heinous crimes.

8.)   There are other class of predators called "missiles" who lurk to assault "snitches" or "rats". Offenders who have assisted government in other crimes, help convict other offenders. Even these predators and preys are craftily paired through economical arrangements for assaults. Most of these assaults also go unreported or are buried under the rug.

9.)   Some inmates are pitted against each other by surreptitiously disclosing the underlying conviction. In almost all cases, bets are laid on the extent of injuries the prey is expected to sustain. Those who refuse to such arrangements or attempt to stand against are put on "mad bone hit" list. Its an assault on sight or opportunity order. Inmate who succeed in assaulting one on "mad bone hit" list is awarded To wit: Cigarrates, tobacco, special food, K2, OJ, stamps, books, pictures, hygine alike. Therefore motivation to assault while living in such deplorable condition is extremely high. Correctional officers have interest in pecuniary gain and their lust for sadism, that needs satisfaction, along with desires to use of force.

10.)   At some point, the erroneously classified inmate is assessed with violating prohibited code 306 as though it was their fault, with remarks, "failure to program", "refusing to goto yard", or "refusing general population assignment" with some or the other variation. At this point an inmate is a confirmed "check-in". The inmate will never again walk @ DFCL with character profile of "Active-Yard". At the disciplinary hearing, the unit Disciplinary Coordinator (UDC) or Disciplinary Hearing Officer (DHO) assesses monetary fines depending on inmate's account balance along with loss of good time credit ranging from 14-27 days and other sanctions in the name of discretion. The inmate almost always pay the fine as it is already encumbered and although the onus of serving the loss of good time is on them, the tax payers bear the burden of housing the inmate unnecessarily. This is the genesis of numerous grievance procedures, that later hound the courts.

11.)   Inmates slowly begin the lost cause of grievance process, wasting stamps in seeking relief from institute, regional office and central office. A remedy that never resolves but generates tremendous paperwork and waste. Majority of the grievance are dismissed due to ignorance of inmates or inevitable timeliness errors. Remaining are dismissed due to discretion of assessing officer. Proceeding to seek resolution from the court by prepaying/part paying nearly $400 for a fine of $50-$100 and loss of 14-27 days good time credit is uneconomical to most inmates, and there is no guarantee of remedy. Then there is risk of retaliation. So the inmates generally stop in their tracks. BOP is well aware of this, that is why fines are assessed and the coffers are filled with immunity. It is a very profitable scheme.

12.)   The erroneous classification and SHU confinement always result in (a) psychological traumas, its assessment, treatment, medication and unnecessary creation of medical records, (b) assaults warranting medical needs, procedures and creation of medical records, and personnel assignment. (c) eventually, some inmates seek courts intervention, resulting in assignment of attorneys and engage court calenders, frivolous or not.

13.)   This erroneous classification results an inmate in SHU confinement on an average 6-12 months and then upon redesignation is either flown or driven to new DFCI, wasting tax payers resources on such transports untill a proper facility commensurate with the inmates security and program needs are met and the inmate is released to general population. During this erroneous classification, the inmate is vulnerable to various violations to wit: traumas, sexual abuse, assaults, loss of property, loss of funds, use of force, loss of valuable opportunity to assist in their own defence in direct appeals pending in their criminal convictions. The targetted class of inmates who suffer the effects of this erroneous classification are (a) those who have assisted government in other crimes warranting a motion under 5K1.1 or Rule 35 in the instant or prior offence or (b) those who have sex offence in the instant or prior offense.

14). BOP has full and fair discretion to commit an inmate into any facility for servicing the Sentences imposed <u>unless</u> the designated facility meets the Criteria: Facility is commensurate to the Security and programming needs of the inmate. An inmate is committed to the custody of BOP as a ward to serve the imposed Sentence in humanely possible manner. The inmate Safety, Security and reasonable care is responsibility of BOP. Neither the judgment of conviction, nor the United States Constitution acquiesce in subjecting an inmate to assaults, Sexual abuse or torturous conditions as a part of sentence. If not for Knowing, or negligent or recklessness in classification and designation procedure, which gives opportunity to acts committed in Knowingly or should have Known mens rea, the resultant pain and suffering, various waste, resources can be completely avoided.

## II   FACTUAL ALLEGATIONS.

15.) Uncovered offenders are class of inmates who in their instant offense or in their background have (a) Sex offense, (b) application of 5K11 or (c) Rule 35 motions. U.S.P Tucson in Tucson, Az, U.S.P Terra Haute in Terra Haute, IN, and U.S.P Coleman II in Coleman, FL are three Known maximum Security penitentiaries which are commensurate to the Security and programming needs of the uncovered offenders class. Inmate of this class can be safely and securely assigned to general population. The character profile of these institutes are generally called Dropout yards or non-active yards. All the three yards offer SOMP and SOTP programs.

16.) USP Victorville, Adelanto, CA (Victorville) is a max security prison, a facility under Federal Bureau Of Prison (BOP). Victorville is an active yard character profile where uncovered offender class of inmates cannot walk the yard i.e that particular class of inmates cannot be assigned to be housed in general population, without risking the safety and security of such inmate.

17.) DO's instant offense is uncovered. He cannot be designated to serve his sentence in an Active-Yard. Doing so will result in him being confined to Secured Housing Unit (SHU) for his own safety and security.

18). DD was classified and Designated to serve his sentence in Victorville. From May 18th of 2019 through January 6th of 2020 he was confined in SHU for 24×7 (not 23×7) under disciplinary sanctions and loss of general population privileges. He was not afforded the mandatory Admission and Orientation program.

19). On the night of 5/18/2019 after 10 P.M count C.O. Martini and Doe knocked on C-157 verbally assaulted DD for his conviction and encouraged his celly Centro to physically and sexually assault DD. To assist Centro, Martin turned off the Duress Alarm, Except for light scuffle, indecent exposure and ejaculation DD has to face, the night was uneventful.

20). On the morning of 5/19/2019, the matter was reported in a PREA ALERT copout to LT Bouche. The staff escorted DD to make an inquiry. Since there was no sexual penetration, it was deemed unworthy of PREA reporting. LT. Bouche informed that Martini is a respectable officer and it was unimaginable of him to have engaged in such a misconduct. DD was assured of an investigation into the matter. His plea to report to DOJ Sexual Abuse Hotline via 'Request to Staff' was denied, and instead was encouraged to follow institute remedy process in paper filing after the investigation was completed. DD was then moved from 'C' Range to 'A' range along with inmate J.T.

21). On 05/20/2019, during the psychological screening in a private setting, upon assurances and confidence offered by a compassionate Dr. DePierre, the matter of sexual abuse and misconduct was divulged. Dr. DePierre expressed indignation of not being notified as per protocol but no surprise on misconduct allegation. Dr. DePierre assured swift action and encouraged reporting Martini's actions to Unit Manager OBrien and to Warden in paper filing.

22.).    A direct Appeal was pending in the court in matter of days, and a conflict was brewing with his counsel on the grounds to claim. DD was desperate to exercise his sixth Amendment right to assist in his own defense. The SHU confinement precluded his access to counsel. DD raised grievances to unit team for assistance, Cautioning, failure to contact his counsel will be detrimental to his appeal.

23).    On   06/05, 06/13, 06/14, 06/17, 06/25, and 06/28 of 2019, Copouts seeking assistance to contact his counsel and other matter requiring discretion were sent to Unit manager O'Brien. LT. Allen and SHU counsellor dutifully scanned those copouts and mailed to O'Brien.

24.)    Despite requesting treatment of privacy, on 07/02/2019, O'Brien met openly in SHU corridor and rejected all remedies. O'Brien loudly screamed, "nothing unforeseen has happened" that warrants assistance. Instead of private setting, O'Brien suggested either openly discuss the sexual abuse and misconduct or let go of it, stating she was aware of what had occurred and it was not a grave PREA concern. O'Brien then warned DD not to send any more copouts and it will be 6-8 months before a redesignation to any other facility can be even considered. O'Brien admonished, any attempt to escalate the matter will only aggravate DD's situation.

25.).    On Approximately 06/08/2019, DD was seperated from JT and Celled with EM. The same day JT was Celled with KS. On 06/13/2019, JT's underlying conviction was surreptitiously disclosed to KS by Martini. An assault was ordered. Bets were laid to the extent of injury JT will suffer in the hands of KS. By evening JT was brutally assaulted by KS to near death. DD was witness to this orchestration and assault.

26.).    On 07/16/2019, an institutional remedy request 985910-F1 was raised seeking remedy from warden. It raised all the issues. Martini's name was withheld due to fear of retaliation. Remedy also disclosed orchestrated attack on JT and DD being the witness. Administrative remedy coordinator received it on 7/22/2019.

27.)    Inspite of being aware of the infirmity that he cannot walk the yard, program, or be assigned to general population, an incident report # 3277823 alleged DO has refused to program in violation of prohibited code 306.

28.)    On 7|24|2019, UDC Godwin acting as DHO, despite repeated pleas and being aware of DO's underlying conviction found guilty of violating prohibited code 306. Fined him $50.⁰⁰ and Fourteen days of loss of good time credit for incident report # 3277823. On 7|26|2019 it was appealed to western region seeking reversal.

29.)    On 7|27|2019, a "kite" began circulating on 'A' range, and DO's underlying conviction was being disclosed with a note to either physically or sexually assault him and the benifits of such assault. It reached to DO's celly EM. After Dinner, DO was physically assaulted by EM and during the altercation. his right leg was broken at knee. It began to swell. Limping on his legs, DO raised the Duress alarm, which brought Martini, Montgomery, and LT. Hoffman to the cell door. DO complained of physical assault, displayed his knee and an impending sexual assault, and requested immediate medical assistance and a cell change.

30.)    Martini suggested to LT. Hoffman that the swollen leg or broken leg was an attempt to feign illness and implicate EM. That EM was a good inmate, and the alarm was false. Martini suggested there to be no real emergency and turned off the duress alarm. As to the impending sexual Assault, Martini: alluded, to LT. Hoffman, "unless there is a dick in his ass and semen around it, its not a rape or assault". LT. Hoffman concurred, and Montgomery laughed. LT. Hoffman, then inquired with EM if he felt safe with "piece of shit" in the cell to which everyone laughed and EM responded negatively. LT. Hoffman advised caution to EM and to take care in the "activity." Martini suggested to DO, the only way to escape was to either "fight" or "fuck" or alternatively "hang yourself". Before the trio left, Martini smugly said "have a good time".

31.)    To prevent any Sexual Abuse, DD excreted and urinated on himself. He then began pounding on the cell door till both his turned bloody. EM rummaged on DD's property and began tearing up his documents. After two hours of continued pounding on the door a C.O. Doe after seeing bloody hands showed mercy and LT. Allen was called in for the incident.

32.)    LT. Allen, after listening to the ordeal, moved DD into suicide watch for his safety as late night cell movements were not possible. LT. Allen advised She will report the matter appropriately. DD's property was confiscated during the move, however, no confiscation slips were provided.

33.).    In the suicide watch, Doctor /Nurse Doe attended and ~~see~~ inspected DD's knee injury. After explaining how the injury occurred, it was determined ~~that~~ not to be a broken knee. But a concern was expressed to the swelling and x-rays were to be ordered. DD was advised to wear a wet towel or cold patch untill x-rays were done, and not to put pressure on the leg. He was informed limping was normal under such circumstances.

34.)    On 7|28 or 7/29 of 2019, L. Hoffman after signing the attendance log in suicide watch inquired DD of his health. He warned DD to stop further escallation of this matter and creating paper work in vain. Due to this, when incoming psychologist inquired why he attempted to harm himself, DD didnot respond.

35.).    On 7/30/2019, Dr. DePierre visited DD in suicide watch and learned all the facts. She inquired as to why a report was not made to on duty psychologist. She was informed of LT. Hoffmans Visit. Dr. DePierre assured to make a PREA and misconduct notification and advised DD to make a paper report as well.

36). On 7/30/2019, despite angry protests, and threats to go on hunger strike, DD was forcibly moved to 'D' range and celled with KS. DD began the hunger strike and was informed by KS that he was put on "mad bone hit" list and he will have to be assaulted. KS attempted to force himself and ejaculated on DD, multiple times. Having seen this cell assignment, Dr. DePierre's attempt to move DD into Holdovery unit was rejected. DD's plea(s) to C.O's to change cells were met with mockery to bloody hands once again.

37). On 7/31/2019, when dispensing pills the food trap was opened, DD locked his hands in the trap to prevent secure it. Cell change and request to speak to Lt. Allen or warden were made and swiftly denied. The C.O. Doe tried to forcibly close the trap and jam DD's hand in vice grip failed and resulted in bruising DD's forearm. OIC Lt. Stencil was called to resolve the standoff. First Stencil denied request to change cells and then denied request to speak to Lt. Allen or warden. Lt. Stencil warned a feirce attack by "team", if he didnot let go of the trap. KS held a pick on DD's neck and warned if the trap were to be let down, DD was "dead meat". Lt. Stencil, C.O. Zachory, Co. O.I cali and other C.O's knew KS was holding DD on the cell door. Zachory said, "even if it were to be possible to help DD, he was not going to assist him because DD is a piece of shit (because of his conviction) and deserved the fuck. Lt. Stencil suggested that it appears, that KS was held in the cell as hostage by DD. Lt. Stencil made a final proposal that he will forget and let go of this infraction and offered a cell change as a bonus in next week if DD let go of the food trap, or he will order a "team raid". DD earnestly made his pleas that his leg was broken, showed his swollen leg, informed him on being on a hunger strike, that he is not a threat and wishes this nuisance to end and hence, his need to speak to Lt. Allen or Warden and cell change. Lt. Stencil mocked at DD's quivering voice and his trembling hands and denied his requests. KS smacked DD for his trembling hands. Lt. Stencil then determined negotiations were over, and ordered the team.

38.)    This was allegeally KS's 3rd attempt at confronting the "team". He expertly padded the cell for incomming attack. Bets were laid on the size of attack. C.O. Doe knocked on the cell door and stated enjoy this for not heeding to stop the activism and being a paper pusher, that DD deserved this for his conviction. He informed KS that he will report him as inmate under hostage situation and congratulated him on conquering a "dip shit" on "mad bone hit" list. The food trap was open for securing but he didnot secure it.

39.)    On the video tape a last warning to surrender was admonished which DD rejected. A team of ten (10) plus fully armed and riot geared officers came near to cell door. DD headed to safety leaving the trap door to be secured. At first eight (8) flash bangs were hurled in the cell screaming "fire in the hole". While DD was struck in horror of those bangs, multiple chemical weapons were discharged. Then numerous rubber pellats with pepper bombs were shot. All of them were shot through the food trap which lied them to be secured. All of the ordinance was shot in the tiny 6 by 9 cell which had no ventilation. Because DD a man with swollen leg, and limping, stood five feet six inches, who was on hunger strike seeking a cell change, who had already left the food trap for the officers to secure it was considered dangerous to safety of the facility and KS was considered as hostage.

40.)    After quenching the thirst of discharging ordinance, in attempt to use some excessive force, the riot geared officers breached the cell, punched kneaded, smacked DD hurting his ribs, dragged him from the cell and slammed him on the floor of corridor outside with their legs pinning him on floor, while he screemed in pain for help.

41.)    The Doe nurse, conducted a quick examination and determined to have caused no injury. DD was then shackled and dropped in the dry cell for 8 hours.

Page 5k.

42).      Lt. Stencil, Zachary, and Doe visited DD in the dry cell. Stencil thanked for making the boring night fun and eventful. Warned DD to quit his activism. Zachary informed it was fun to see a "dipshit" suffer, and he will take different step if DD were to be seen on the glass or food trap. Stencil inquired if DD was being assisted by any officers in his remedy request. Doe advised, it is better to suck a dick then ask a cell change if one is on 'mad bone hit' list. They collectively informed it would be futile to escalate the matter any further because nothing untoward happened. And in any case it will be the honest officers word against a heinous convicts. Even if DD were to take it to court, he will be faced to pass through U.S.P. Victorville and other "friendly" correctional officers. DD was advised to cease all his efforts of reporting immediatly or other forms of use of force will follow him throughout. In exchange Lt Stencil was willing to drop charges of taking KS as hostage. U.S Attorney's office was prepared to indict him and were excited with prospects of convicting DD.

43).      On 8/1/2019, an incident report # 3286111 was issued to DD. In that it was alleged that on 7/31/2019, DD held the food trap and threatened to sexually assault the officers in violation of prohibited Code 203.

44).      On 8/21/2019, in a disciplinary hearing, UDC Godwin who had no authority of a DHO found DD guilty of incident report 328611, which alleged threatning to sexually assault an officer in violation of prohibited code 203. Godwin fined DD $90.00, 27 days of good time less, and four month loss of all privileges. The sanctiones were appealed to western region with remedy-ID - 99044-R1.

45).      Conflict with DD's counsel erupted when his counsel filed an appeal without considering grounds DD wished to raise. DD's attempt to access legal resources were denied including legal calls to his counsel. Due to it, he could not articulate adequate reasons warranting recusal of his

Page 5 L

court appointed counsel. Due to his traumatic experience, he could not legally support the claims he wished his counsel to raise in his direct appeal. The motions panel denied his motions as frivolous. The loss of this valuable appeal is directly attributed to DDs confinement and his treatment in Victorville SHU.

46). Numerous copouts were sent to property officer requesting return of legal documents, property that was confiscated on 9/27/2019. Specifically, requests on 9/27, 10/24, 10/27, and 11/27 q 2019 were scanned by SHU counsellor Shirley to Morena. Final plea was made in the month of December. Numerous copouts were scanned by Shirley to the new unit manager seeking assistance, the dates are unavailable at the moment.

47). An informal remedy via BP-8 was raised to unit team inquiring status of Appeal for incident #3277823 and Remedy. ID 985910-F1. On recommendation of unit team in a written response, a western region remedy was raised on BP-10 inquiring the status of those appeals.

48). Martini continued his daily harassment without impunity. Frustrated with his insults a second institution remedy was raised on 12/2/2019 and till today, no response was received.

49). On 01/07/2020 after eight long months, DD was transferred to U.S.P. Tucson, a facility located in Tucson, AZ where he was safely assigned into general population. During this transfer, his second property was once again lost by Victorville. He received one forever stamp and one empty BP-9 form as his property.

50). Remedies for incident #3277823 and Remedy ID#985910-F1 were denied by western region for various regions, which when appealed to central office were affirmed for same reasons.

Page 5M.

51). After numerous obliques and objuscations Remedy ID # 990441 was transformed to Remedy ID # 1048963-R1. After patiently waiting for remedy and repeated inquiries, in April of 2021, DO was informed that the incident # 3286111 supporting Remedy ID # 1048963 was expunged and an appeal to central office was not possible. No notices were afforded. However, the monetary fine assessed was not reimbursed.

52). On 04/08/2021, via a certified mail (with tracking # 7020-0640-0002-2934-5215) a combined Tort claim for all the incidents was raised. On 05/24/2021, it was acknowledged as received on 04/16/2021 with Claim # TRT-WXR-2021-05161 and on Oct 16, 2021, it was considered as denied. This cause of action is timely under both <u>Bivens</u> and <u>Federal Tort Claims</u>.

53). For eight (8) long months (05/18/2019 - 01/07/2020), DO was confined in SHU of Victorville 24x7 (<u>not 23x7</u>) without access to (i) 1 hour recreation afforded to all SHU inmates, even those who are on Disciplinary Sanctions (ii) denied opportunity to practice religious beliefs, in that, he was denied no-meat vegetarian meals and was instead suggested to separate meats and eat whatever remained <u>or</u> not eat at all. He lost nearly 35 lbs during the confinement (iii) Denied access to legal resources, in that DO's inability to allege meritorious claims in support of irreconcilable conflicts to recuse his counsel and allege claims that needed to be raised on direct appeal, so as not to be defaulted are directly attributed to denial of access to legal resources, confiscation of legal and other property, denying legal calls to his appointed counsel. (iv) Instead DO was subjected to derision, intense violence, sexual abuse, assaults. As a direct, proximate and reasonably foreseeable result of the actions of BOP, its agents, officers and employees individually and combined, DO has suffered damages, fines, including physical pains and suffering, mental anguish, loss of meaningful opportunity on direct appeal, all of which are continuing or permanent in nature.

54). There is abundant premeditation in confiscating property not once but twice by Defendant Moreno. Defendants Martini, Montgomery, Zachary, Lt. Hoffman, Lt Stencil acted with sufficient legal or actual malice. There is ample evidence of premeditation in the events that unfolded at each interlude. Defendants O'Brien, the Warden or Administrative remedy coordinator had actual or constructive knowledge of such kind of assaults occurring on regular basis and DD specifically reported those. From the circumstantial evidence, the only way Defendant Martini and his associates would have learned of DD's attempts to report unlawful activities, abuses and their misconducts in Remedy ID # 985910-F1 was through disclosures by Warden or Administrative Remedy Coordinator. They deliberately chose to ignore, turn blind eye, suppress the matter and indirectly encourage such acts.

55). These factual allegations are made without support of legal theories. DD preserves his rights to subsequently amend the pleadings with legal theories he alleges to prevail upon in further proceedings. There is every reasonable probability to amend this complaint as attempts to learn of defendants full legal names were thwarted. DD's attempt to learn facts and recover copous via FOIA have been indefinetely withheld and not even an acknowledgment since March of 2020. DD intends to move the counsel for defendants under Fed.R.Civ.Proc. 26(f) to gain more insight and prevail upon limited initial discovery to properly allege other facts discovered.

Page 50.

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

1.) Injunctive relief on such negligent and reckless classification and designation process on the uncovered class of inmates and any disciplinary proceeding pursuant to such classification and designation be declared illegal, and to conserve waste.

2). From the year 2000, all the penalties assessed in the form of loss of good time credit pursuant to such classification and designation be returned to those inmates who are still incarcerated and those inmates who have been released, their loss of good time credit be monetized and equally distributed to criminal Justice non-profits listed in interested parties.

3) From the year 2000, all the monetary penalties assessed and encumbered on such classification and designations be equally distributed to criminal Justice non-profits listed in interested parties.

4). In the case, action proceeds to trial plaintiff prays;

i) Defendant Martini, Montgomery, Zachary, and Moreno each pay a sum of $50,000.⁰⁰/¹⁰⁰ divided equally amongst criminal Justice non-profit listed in interested parties.

ii) Defendant O'Brien, administrative remedy coordinator, Lt. Hoffman and Lt. Stencil each pay a sum of $75,000.⁰⁰/¹⁰⁰ divided equally amongst criminal Justice non-profit listed in the interested parties.

iii) B.O.P U.S.P Victorville facility to pay a sum of $500,000.⁰⁰/¹⁰⁰ divided equally amongst the criminal Justice non-profits listed in the interested parties.

iv) United States to pay a sum of $1,000,000.⁰⁰/¹⁰⁰ to plaintiff after reducing the cost of incarceration

5). Or if the case does not proceed to trial and alternative resolution were to result in out of court settlement

i). Defendant Martini, Montgomery, Zachary, Moreno each to pay a sum of $5000.⁰⁰/¹⁰⁰ divided equally amongst the criminal Justice non-profits listed in the interested parties.

... continued on page 6B.

December |30th| 2021.
*(Date)*

_____
*(Signature of Plaintiff)*

CV-66 (7/97)                         **CIVIL RIGHTS COMPLAINT**                         Page 6 of 6

ii). Defendants O'Brien, Administrative Remedy Coordinator, Lt Hoffman, Lt Stencil each to pay a sum of $20,000 $^{00/100}$ equally divided amongst the criminal Justice non-profits listed in the interested parties.

iii). B.O.P U.S.P victorville, CA facility to pay a sum of 200,000 $^{00/100}$ equally divided amongst the Criminal Justice non-profits listed in the interested parties.

iv). United States to pay a sum of $500,000 $^{00/100}$ to plaintiff after deducting the cost of incarceration.

6.). Pre and Post - Judgment interest on those damages as allowed by the law

7.). Plaintiff be awarded cost of suit

8.). Any and all other relief that the court may deem Just and Proper.

-- Page- 6A.

From:

    Deepak Deshpande ( #70487-018 ).

    USP TUCSON, P.O.BOX NO : 24550.

    TUCSON, AZ 85734.

To:

    Clerk of Court,

    United States District Court

    (Central District of California)

    255 EAST TEMPLE STREET, ROOM 180.

    Los Angeles, CA 90012.

January 5th, 2022

Subject : Initial Complaint and proceeding anonymously.

Dear Clerk of Court,

    Greetings to you on the New Year. Enclosed is a Civil Complaint in the official format. As you notice, I am attempting to proceed anonymously. The instructions and procedures do not detail or have instructions to do so. I have tried to comply with all the steps within my control. To protect my identity and the risks associated with exposure, I have captioned them under my initials. In case, you have to mail any respones from the Court to mail it back to me, I urge you, to use the address above. My sincerest apologies if this has caused you any inconvenience.

Thanking you in advance.

Sincerely,

Deepak Deshpande ( #70487-018 ).



7020 0640 0002 2500 9258

70487-018
Deepak Deshpande
Inmate # 70487-018
- United States Penitentiary
P.O.Box # 24550
Tucson, AZ 85734
United States



LEGAL MAIL
28 C.F.R. § 540.18 et. seq.

To:

Clerk of the court,

United States District Court,

Central District of California.

255 East Temple Street, Room 180,

Los Angeles, CA 90012.





LEGAL - MAIL

[ 28 C.F.R. § 540.18 et seq Postestami ]