UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.D., | Case No. 5:22-cv-00061-JGB-JC |
| Plaintiff, | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND, DIRECTING PLAINTIFF TO RESPOND TO ORDER, AND DENYING REQUEST TO SEAL WITHOUT PREJUDICE |
| v. | |
| UNITED STATES, et al., | |
| Defendants. | |

## I.   SUMMARY

On January 10, 2022, plaintiff "D.D.",[1] a federal prison inmate who is proceeding *pro se* and has been granted leave to proceed without prepayment of the filing fee ("IFP)"), filed a Civil Rights Complaint ("Complaint" or "Comp.") pursuant to <u>Bivens v. Six Unknown Agents</u>, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA").  (Docket No. 1).  Plaintiff sues the United States, the Bureau of Prisons ("BOP"),  and eight BOP employees who worked at the United

---

[1]For purposes of this Order, the Court will refer to the plaintiff as D.D. or plaintiff.  His desire to proceed via a pseudonym will be addressed further below.

States Penitentiary in Victorville, California ("USP Victorville"):  Correctional Officers Martini, Montgomery, Zachary, and Moreno; Lieutenants Stencil and Hoffman; Unit Manager O'Brien; and an unknown Administrative Remedy Coordinator.  (Comp. at 1, 3-6, 8 (as paginated on the Court's electronic docket)). All defendants are sued in both their individual and official capacities.  (Comp. at 3-6).

Also on January 10, 2022, plaintiff filed a Notice of Intent to Proceed Anonymously ("Notice"), which, among other things, asks the Court to order the Clerk of the Court to "generate a sealed event" allowing plaintiff to file unspecified documents under seal.  (Docket No. 2).

For the reasons discussed herein, plaintiff's Complaint is deficient and is dismissed with leave to amend and his request to "generate a sealed event" is denied without prejudice.

## II.   THE COMPLAINT

Plaintiff alleges he is a member of a class of "uncovered" offenders "who in their instant offense or in their background have (a) sex offense, (b) application of [Section] 5K1.1 [of the United States Sentencing Guidelines ("Guidelines")[2]] or (c) Rule 35 motions."[3]  (Comp. ¶¶ 15, 17 (footnotes added)).  He asserts that because his offense is "uncovered," he cannot be designated to serve his sentence in an "active yard" since "[d]oing so will result in him being confined to [a]

---

[2]Section 5K1.1 permits a district court to depart from the Guidelines upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense.  United States v. Flores, 559 F.3d 1016, 1019 (9th Cir. 2009) (quoting United States Sentencing Guidelines § 5K1.1).

[3]Subject to certain requirements and limitations, Rule 35 of the Federal Rules of Criminal Procedure authorizes a court to correct an error in sentencing that resulted from arithmetical, technical, or other clear error, and to reduce a sentence when the defendant has provided substantial assistance to the government.  United States v. Kelley, 962 F.3d 470, 476 n.8 (9th Cir. 2020) (citation omitted), cert. denied, 141 S. Ct. 2878 (2021).

1  Secured Housing Unit [("SHU")] for his own safety and security." (Comp. ¶ 17).

2  USP Victorville "is an active yard" facility "where uncovered offender[s] . . .

3  cannot walk the yard . . . without risking [their] safety and security[.]" (Comp.

4  ¶ 16). Nevertheless, plaintiff was classified and designated to serve his sentence at

5  USP Victorville. (Comp. ¶ 19).

6   Plaintiff contends that between May 18, 2019, and January 6 or 7, 2020, he

7  was confined in the SHU 24 hours a day and 7 days a week "under disciplinary

8  sanctions and loss of population privileges." (Comp. ¶¶ 18, 53). During that time,

9  he was denied the recreational opportunities afforded all SHU inmates. (Comp.

10  ¶ 53). He was also prevented from practicing his religious beliefs in that he was

11  refused no-meat vegetarian meals and was told to separate the meat from the rest of

12  the meal and eat whatever remained or not to eat at all and, as a result, he lost

13  nearly 35 pounds during his confinement. (Comp. ¶ 53).

14   Plaintiff asserts that after 10:00 p.m. on May 18, 2019, Martini and "Doe"

15  (not a defendant) verbally abused plaintiff about his conviction and encouraged

16  plaintiff's cellmate to physically and sexually assault plaintiff, and Martini turned

17  off the duress alarm to assist the cellmate. (Comp. ¶ 19). Plaintiff states that

18  "[e]xcept for [a] light scuffle, indecent exposure, and ejaculation [on plaintiff's]

19  face, the night was uneventful." (Comp. ¶ 19).

20   The next morning, the matter was reported to Lieutenant Bouche in a Prison

21  Rape Elimination Act ("PREA") alert, but since there was no sexual penetration, it

22  was not deemed worthy of PREA reporting. (Comp. ¶ 20). Bouche told plaintiff

23  that Martini was a respectable officer and it was unimaginable that he would have

24  engaged in such misconduct. (Comp. ¶ 20). Nevertheless, plaintiff was assured

25  that the incident would be investigated and plaintiff was transferred to a different

26  cell. (Comp. ¶ 20).

27  ///

28  ///

3

1  On May 20, 2019, plaintiff disclosed the incident to Dr. DePierre during a

2  psychological screening, and Dr. DePierre encouraged plaintiff to report the

3  incident to O'Brien and the Warden. (Comp. ¶ 21).

4  Additionally, on seven days in June 2019, plaintiff sent written requests to

5  O'Brien seeking O'Brien's assistance in contacting plaintiff's appellate counsel

6  and in other matters requiring discretion. (Comp. ¶ 23). On July 2, 2019, O'Brien

7  met with plaintiff in the SHU corridor and denied plaintiff's requests. (Comp.

8  ¶ 24). According to plaintiff, O'Brien loudly screamed "'nothing unforseen has

9  happened'" and suggested plaintiff either openly discuss the sexual abuse and

10  misconduct or drop it since O'Brien was aware of what had occurred and it was not

11  a grave PREA concern. (Comp. ¶ 24). O'Brien then warned plaintiff not to send

12  any more written requests, informed him it would be 6-8 months before

13  redesignation to another facility could be considered, and warned plaintiff that any

14  attempts to escalate the matter would only aggravate plaintiff's situation. (Comp.

15  ¶ 24).

16  On July 16, 2019, plaintiff made an institutional remedy request to the

17  warden raising all of plaintiff's issues, but withholding Martini's name because

18  plaintiff feared retaliation. (Comp. ¶ 26). The administrative remedy coordinator

19  received this request on July 22, 2019, and it was ultimately denied. (Comp. ¶¶ 26,

20  50).

21  Plaintiff was at some point charged in an incident report with refusing to

22  program in violation of BOP Prohibited Acts Code 306. (Comp. ¶ 27); see also 28

23  C.F.R. § 541.3, Table 1, 306. On July 24, 2019, Disciplinary Hearing Officer

24  Godwin found plaintiff guilty of violating Code 306, and plaintiff was fined $50.00

25  and lost 14 days of good time credit. (Comp. ¶ 28). Plaintiff appealed this

26  decision, but his appeals were denied. (Comp. ¶¶ 28, 50).

27  On July 27, 2019, a "kite" began circulating discussing plaintiff's underlying

28  conviction and how it would be beneficial to physically or sexually assault

4

plaintiff.  (Comp. ¶ 29).  It reached plaintiff's cellmate, who physically assaulted plaintiff and broke plaintiff's right leg at the knee.  (Comp. ¶ 29).  Plaintiff then used the duress alarm, and Martini, Montgomery and Hoffman responded to the alarm.  (Comp. ¶ 29).  Plaintiff informed them of the attack and an impending sexual assault, showed them his injuries, and requested immediate medical assistance and a cell change.  (Comp. ¶ 29).  However, Martini told Hoffman that plaintiff's leg injury was an attempt to feign illness and implicate plaintiff's cellmate, the cellmate was a good inmate, and it was a false alarm.  (Comp. ¶ 30).  Martini then turned off the duress alarm and, with regard to plaintiff's fears of being sexually assaulted, Martini told Hoffman "'unless there is a dick in his ass and semen around it, [it's] not a rape or assault.'"  (Comp. ¶ 29).  Hoffman agreed and Montgomery laughed.  (Comp. ¶ 29).  Hoffman then asked plaintiff's cellmate if he felt safe with a "'piece of shit'" in the cell, everyone laughed and the cellmate responded negatively.  (Comp. ¶ 29).  Hoffman advised the cellmate to use caution and "take care in the 'activity.'"  (Comp. ¶ 29).  Martini told plaintiff the only ways to escape were "to either 'fight' or 'fuck'" or to hang himself.  (Comp. ¶ 29).  Before leaving, Martini said "'have a good time.'"  (Comp. ¶ 29).

Thereafter, plaintiff excreted and urinated on himself to prevent being sexually assaulted.  (Comp. ¶ 31).  He then began pounding on the cell door until both his hands were bloody while plaintiff's cellmate went through plaintiff's property and tore up documents.  (Comp. ¶ 31).  After two hours, an unknown correctional officer called Lieutenant Allen, who moved plaintiff to suicide watch. (Comp. ¶¶ 31-32).  Plaintiff's property was confiscated during the move, he was not provided a confiscation slip, and his property was not timely returned.  (Comp. ¶¶ 32, 46).

A doctor examined plaintiff's knee while plaintiff was on suicide watch and determined it was not broken, but x-rays were ordered because of the swelling and plaintiff was advised to not put any pressure on the leg.  (Comp. ¶ 33).

1    On July 28 and 29, 2019, Hoffman warned plaintiff to stop further escalation

2  of this matter; however, on July 30, 2019, Dr. DePierre visited plaintiff and advised

3  him to make a report.  (Comp. ¶¶ 34-35).

4    On July 30, 2019, despite his protests, plaintiff was moved from suicide

5  watch and placed with another cellmate.  (Comp. ¶ 36).  Plaintiff began a hunger

6  strike in protest and the cellmate informed plaintiff that he had been placed on a

7  "'mad bone hit'" list and had to be assaulted.[4]  (Comp. ¶ 36).  The cellmate then

8  attempted to force himself on plaintiff and ejaculated on plaintiff multiple times.

9  (Comp. ¶ 36).  Dr. DePierre attempted to have plaintiff moved to another unit, but

10  the request was rejected and plaintiff's pleas "to change cells were met with

11  mockery to bloody hands once again."  (Comp. ¶ 36).

12    On July 31, 2019, when his cell's food trap was opened, plaintiff locked his

13  hands inside to prevent the trap from being secured and requested a cell change and

14  to speak to Lieutenant Allen.  (Comp. ¶ 37).  Plaintiff's requests were denied, and a

15  correctional officer attempted to forcefully close the trap, bruising plaintiff's

16  forearm.  (Comp. ¶ 37).  Stencil was called to resolve the standoff, and he denied

17  plaintiff's requests to change cells or speak to Allen or the warden.  (Comp. ¶ 37).

18  Stencil warned plaintiff of a fierce attack if he did not let go of the trap while

19  plaintiff's cellmate held a "pick" on plaintiff's neck and told plaintiff he was

20  "'dead meat'" if he let the trap down.  (Comp. ¶ 37).  Stencil, Zachary and other

21  correctional officers knew that plaintiff's cellmate was holding plaintiff on the cell

22  door and Zachary told plaintiff that even if it was possible to help plaintiff, he was

23  not going to do it because plaintiff "is a piece of shit (because of his conviction)

24  and deserved the fuck."  (Comp. ¶ 37).  Stencil suggested that it appeared plaintiff

25  was holding his cellmate hostage and proposed that he would forget the incident

26  _____

27    [4]Plaintiff explains that a "mad bone hit" list is "an assault on sight or opportunity order"
   and that an inmate who succeeds in assaulting someone on such a list is rewarded for the attack.

28  (Comp. ¶ 9).

1   and change plaintiff's cell the following week if plaintiff let go of the trap;

2   however, if he did not do so, Stencil would order a "'team raid.'"  (Comp. ¶ 37).

3   Plaintiff responded that his leg was broken, showed the officers his swollen leg,

4   and said he was on a hunger strike and not a threat and he just needed a cell change

5   and to speak to Allen or the Warden; however, Stencil mocked plaintiff and denied

6   his requests while plaintiff's cellmate smacked plaintiff.  (Comp. ¶ 37).  Stencil

7   then ended negotiations and ordered a response team.  (Comp. ¶ 37).

8        Plaintiff's cellmate then padded the cell for the incoming attack.  (Comp.

9   ¶ 38).  A correctional officer knocked on the door and told plaintiff "enjoy this for

10   not heeding to stop the activism and [for] being a paper pusher" and stated plaintiff

11   deserved this because of his conviction.  (Comp. ¶ 38).  The correctional officer

12   also informed plaintiff's cellmate that he would report him as an inmate under a

13   hostage situation and congratulated him for "conquering a 'dip shit' on [the] 'mad

14   bone hit' list."  (Comp. ¶ 38).

15        Plaintiff states that after he rejected a last warning to surrender, a response

16   team of ten or more officers fully armed in riot gear approached the cell and

17   plaintiff moved away from the food trap.  (Comp. ¶ 39).  The officers hurled eight

18   "flash bangs" into the cell, discharged multiple chemical weapons and shot

19   numerous rubber pellets with pepper bombs through the food trap.  (Comp. ¶ 39).

20   All of this occurred in a 6x9 cell which had no ventilation.  (Comp. ¶ 39).  The

21   response team then breached the cell and punched, kneed and smacked plaintiff,

22   hurting plaintiff's ribs.  (Comp. ¶ 40).  Plaintiff was then dragged from the cell and

23   slammed to the ground with his legs pinned on the floor while he screamed in pain

24   for help.  (Comp. ¶ 40).  Plaintiff states there is a videotape of the incident.  (Comp.

25   ¶ 39).

26        Plaintiff was examined by a nurse, who determined plaintiff was not injured.

27   (Comp. ¶ 41).  Plaintiff was then shackled and placed in a dry cell for eight hours.

28   (Comp. ¶ 41).  Stencil, Zachary and another correctional officer visited plaintiff in

the dry cell, Stencil thanked plaintiff for making the night fun and eventful, Zachary said "it was fun to see a 'dip shit' suffer," and the other officer told plaintiff "it is better to suck a dick than ask [for] a cell change if one is on [the] 'mad bone hit' list." (Comp. ¶ 42). Plaintiff was then informed it would be futile to escalate this matter further because nothing untoward happened and it would be the statements of honest officers against the claims of a heinous convict. (Comp. ¶ 42). Plaintiff was told that if he ceased all reporting efforts immediately, Stencil was willing to drop the charge of taking plaintiff's cellmate as a hostage, but if he did not do so, the United States Attorney's Office was prepared to indict him and other forms of force would be used against him. (Comp. ¶ 42).

On August 1, 2019, an incident report was issued charging plaintiff with threatening another with bodily harm or any other offense in violation of BOP Prohibited Acts Code 203 for allegedly threatening to sexually assault a correctional officer. (Comp. ¶ 43); see also 28 C.F.R. § 541.3, Table 1, 203.

On August 21, 2019, plaintiff was found guilty of the Code 203 violation and he was fined $90.00 and lost 27 days of good time credit and four months of privileges. (Comp. ¶ 44). Plaintiff appealed this decision, and the incident report was later expunged. (Comp. ¶¶ 44, 51).

During these events, plaintiff had a direct appeal of his criminal conviction pending; however, his SHU confinement precluded his access to counsel. (Comp. ¶ 22). Plaintiff was denied legal calls to his counsel, who filed an appeal without considering issues plaintiff wanted to raise. (Comp. ¶ 45). And due to plaintiff's traumatic experiences, he could not support the claims he wished counsel to raise on direct appeal, and his motions to relieve appointed counsel were denied as frivolous. (Comp. ¶¶ 45, 53).

While plaintiff was confined at USP Victorville, Martini continued his daily harassment of plaintiff with impunity. (Comp. ¶ 48). Plaintiff was finally transferred to the United States Penitentiary in Tucson, Arizona on January 7,

8

2020, where he was safely assigned to the general population. (Comp. ¶ 49). During this transfer, his property was lost at USP Victorville. (Comp. ¶ 49). Plaintiff asserts that Moreno, Martini, Montgomery, Zachary, Hoffman, and Stencil are responsible for the two times he lost property. (Comp. ¶ 54).

Plaintiff filed a combined tort claim for all incidents on April 8, 2021, and it was received on April 16, 2021. (Comp. ¶ 52).

Based on these allegations, plaintiff seeks: injunctive relief "on such negligent and reckless classification and designation process on the uncovered class of inmates and any disciplinary proceeding pursuant to such classification and designation be declared illegal, and to conserve waste"; "from the year 2000, all the penalties assessed in the form of loss of good time credit pursuant to such classification and designation be returned to those inmates who are still incarcerated and those inmates who have been released, their loss of good time credits be monetized and equally distributed to criminal justice non-profits listed in interested parties"; that any monetary penalties assessed against "such classification and designations be equally distributed to criminal justice non-profits listed in interested parties"; and damages against the named defendants. (Comp. at 23).

III.   **STANDARD OF REVIEW**

Since plaintiff is a prisoner proceeding IFP on a complaint seeking redress against governmental defendants, his Complaint is subject to *sua sponte* review and must be dismissed if it is: (1) frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief from a defendant immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; Rhodes v. Robinson, 621 F.3d 1002, 1004 (9th Cir. 2010); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000); Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).

Dismissal for failure to state a claim is appropriate if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp.

1  v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678
2  (2009).  "A claim has facial plausibility when the plaintiff pleads factual content
3  that allows the court to draw the reasonable inference that the defendant is liable
4  for the misconduct alleged." Iqbal, 556 U.S. at 678; Hartmann v. Cal. Dep't of
5  Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013).  Although plaintiff must
6  provide "more than labels and conclusions, and a formulaic recitation of the
7  elements of a cause of action will not do," Twombly, 550 U.S. at 555; Iqbal, 556
8  U.S. at 678, "[s]pecific facts are not necessary; the [complaint] need only give the
9  [defendants] fair notice of what the . . . claim is and the grounds upon which it
10 rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (citations and
11 internal quotation marks omitted); Twombly, 550 U.S. at 555.

12      In considering whether to dismiss a complaint, the Court must accept the
13 factual allegations of the complaint as true,[5] Wood v. Moss, 572 U.S. 744, 755 n.5
14 (2014); Erickson, 551 U.S. at 93-94, construe the pleading in the light most
15 favorable to the pleading party, and resolve all doubts in the pleader's favor.
16 Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Berg v. Popham, 412 F.3d 1122,
17 1125 (9th Cir. 2005).  *Pro se* pleadings are "to be liberally construed" and are held
18 to a less stringent standard than those drafted by a lawyer.  Erickson, 551 U.S. at
19 94; Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Hebbe v.
20 Pliler, 627 F.3d 338, 342 (9th Cir. 2010) ("Iqbal incorporated the Twombly
21 pleading standard and Twombly did not alter courts' treatment of pro se filings;

22

23

24      [5]"[T]he tenet that a court must accept as true all of the allegations contained in a
25 complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678;
26 Yagman v. Garcetti, 852 F.3d 859, 863 (9th Cir. 2017).  Likewise, the Court "need not accept as
true allegations contradicting documents that are referenced in the complaint or that are properly
27 subject to judicial notice." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2006);
Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir.
28 2013).

1  accordingly, we continue to construe pro se filings liberally when evaluating them

2  under Iqbal.").  Dismissal for failure to state a claim can be warranted based on

3  either the lack of a cognizable legal theory or the absence of factual support for a

4  cognizable legal theory.  See Taylor v. Yee, 780 F.3d 928, 935 (9th Cir. 2015), cert.

5  denied, 136 S. Ct. 929 (2016); Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d

6  1097, 1104 (9th Cir. 2008).  A complaint may also be dismissed for failure to state

7  a claim if it discloses some fact or complete defense that will necessarily defeat the

8  claim.  See Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 902 (9th Cir. 2013),

9  cert. denied, 573 U.S. 916 (2014).

10  **IV.   DISCUSSION**

11       The Court has reviewed the Complaint under the aforementioned standards

12  and has concluded the Complaint is deficient and must be dismissed with leave to

13  amend.

14       Initially, it appears that plaintiff is attempting to bring a class action or at

15  least raise class allegations.  (See, e.g., Comp. at 23 & ¶¶ 1-17).  However,

16  plaintiff, who is proceeding *pro se*, cannot represent other individuals in this

17  action.  The privilege to represent oneself *pro se* "is personal to the litigant and

18  does not extend to other parties or entities."  Simon v. Hartford Life, Inc., 546 F.3d

19  661, 664 (9th Cir. 2008); see also Johns v. Cnty. of San Diego, 114 F.3d 874, 876

20  (9th Cir. 1997) ("While a non-attorney may appear pro se on his own behalf, '[h]e

21  has no authority to appear as an attorney for others than himself.'" (quoting C.E.

22  Pope Equity Trust v. United States, 818 F.2d 696, 697 (9th Cir. 1987)).  Nor may a

23  *pro se* plaintiff represent a class in a class action.  See McShane v. United States,

24  366 F.2d 286, 288 (9th Cir. 1966) (non-lawyer had no authority to appear as an

25  attorney for other persons in a purported class action); DeBrew v. Atwood, 792

26  F.3d 118, 132 (D.C. Cir. 2015) (A "*pro se* litigant who is not trained as a lawyer is

27  simply not an adequate class representative."); Oxendine v. Williams, 509 F.2d

28  1405, 1407 (4th Cir. 1975) (per curiam) ("Ability to protect the interests of the

1  class depends in part on the quality of counsel, and we consider the competence of
2  a layman representing himself to be clearly too limited to allow him to risk the
3  rights of others."); see also Simon, 546 F.3d at 664 ("[C]ourts have routinely
4  adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on
5  behalf of others in a representative capacity.").

6       Moreover, "a pro se litigant is not excused from knowing the most basic
7  pleading requirements." American Ass'n of Naturopathic Physicians v. Hayhurst,
8  227 F.3d 1104, 1107-08 (9th Cir. 2000), cert. denied, 532 U.S. 1008 (2001).  For
9  instance, Fed. R. Civ. P. 10(a) requires that the "[t]he title of the complaint must
10 name all the parties."  Here, the title of plaintiff's Complaint lists the defendants as
11 the "United States, BOP, Martini, et al.[,]" while the body of the Complaint
12 identifies ten defendants.  (Complaint at 1, 4-6).  This does not satisfy Rule 10(a).
13 See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-63 (9th Cir.), cert. denied, 506 U.S.
14 915 (1992).

15      Plaintiff's Complaint also violates Fed. R. Civ. P. 10(b), which requires that
16 a "party must state its claims or defenses in numbered paragraphs, each limited as
17 far as practicable to a single set of circumstances. . . .  If doing so would promote
18 clarity, each claim founded on a separate transaction or occurrence . . . must be
19 stated in a separate count. . . ."  "'Separate counts will be required if necessary to
20 enable the defendant to frame a responsive pleading or to enable the court and the
21 other parties to understand the claims.'"  Bautista v. Los Angeles Cnty., 216 F.3d
22 837, 840 (9th Cir. 2000) (citation omitted).  "Courts have required separate counts
23 where multiple claims are asserted, where they arise out of separate transactions or
24 occurrences, and where separate statements will facilitate a clear presentation."  Id.
25 at 840-41.  "In such cases, separate counts permit pleadings to serve their intended
26 purpose to frame the issue and provide the basis for informed pretrial proceedings."
27 Id. at 841.  "'Experience teaches that, unless cases are pled clearly and precisely,
28 issues are not joined, discovery is not controlled, the trial court's docket becomes

12

1  unmanageable, the litigants suffer, and society loses confidence in the court's

2  ability to administer justice.'" Id. (citations omitted).  Here, the Complaint

3  includes fifteen pages of allegations against the defendants in a single claim that

4  posits no legal theory, but discusses, among other things, several alleged sexual

5  assaults and physical attacks, multiple disciplinary proceedings, purported

6  interference with plaintiff's ability to communicate with his appellate counsel,

7  excessive force, placing plaintiff on a hit list, recreational deprivation, and denial

8  of religiously appropriate meals.[6]  (See Comp. at 8-22).

9       Given the Rule 10 violations, plaintiff's Complaint must be dismissed with

10  leave to amend.  The Court will nevertheless highlight several other deficiencies in

11  the Complaint.

12       Plaintiff has filed this action against the United States and the BOP, among

13  other parties.  (Comp. at 1, 4).  However, "[u]nder settled principles of sovereign

14  immunity, the United States, as sovereign, is immune from suit save as it consents

15  to be sued . . . and the terms of its consent to be sued in any court define that

16  court's jurisdiction to entertain suit." United States v. Dalm, 494 U.S. 596, 608

17  (1990) (citations and internal quotation marks omitted); Hercules, Inc. v. United

18  States, 516 U.S. 417, 422 (1996).  Bivens "does not provide a means of cutting

19  through the sovereign immunity of the United States itself," Arnsberg v. United

20  States, 757 F.2d 971, 980 (9th Cir. 1985), cert. denied, 475 U.S. 1010 (1986); Cato

21

22       [6]For the same reasons, plaintiff's Complaint also at least arguably violates Fed. R. Civ. P.
    8, which requires that a complaint contain "a short and plain statement of the claim showing that
23  the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2); see also Fed. R. Civ. P. 8(d)(1) ("Each
    allegation must be simple, concise, and direct."); Dura Pharm., Inc. v. Broudo, 544 U.S. 336,
24  346 (2005) ("The 'short and plain statement' must provide the defendant with 'fair notice of
    what the plaintiff's claim is and the grounds upon which it rests.'" (citation omitted)); McHenry
25  v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996) (Rule 8 is not satisfied when "one cannot
    determine from the complaint who is being sued, for what relief, and on what theory, with
26  enough factual detail to guide discovery."); Jones v. Cmty. Redevelopment Agency, 733 F.2d
    646, 649 (9th Cir. 1984) ("[A] pleading must give fair notice and state the elements of the claim
27  plainly and succinctly." (citation and internal punctuation omitted)).

28

1   v. United States, 70 F.3d 1103, 1110 (9th Cir. 1995), nor may a Bivens claim be

2   brought against an agency of the United States, such as the BOP.  Federal Deposit

3   Ins. Corp. v. Meyer, 510 U.S. 471, 483-86 (1994); Western Radio Servs. Co. v.

4   United States Forest Serv., 578 F.3d 1116, 1119 (9th Cir. 2009), cert. denied, 559

5   U.S. 1106 (2010); Bruns v. National Credit Union Admin., 122 F.3d 1251, 1255

6   (9th Cir. 1997).  Accordingly, plaintiff cannot maintain a Bivens action against the

7   United States or BOP.  Meyer, 510 U.S. at 483-86; see also Correctional Servs.

8   Corp. v. Malesko, 534 U.S. 61, 72 (2001) (A "prisoner may not bring a Bivens

9   claim against . . . the United States[] or the BOP."); DaVinci Aircraft, Inc. v.

10  United States, 926 F.3d 1117, 1128 (9th Cir.) ("[T]he district court properly

11  dismissed the Bivens claims against the United States for lack of subject matter

12  jurisdiction."), cert. denied, 140 S. Ct. 439 (2019).

13          Similarly, plaintiff has sued the eight individual defendants in both their

14  individual and official capacities.  (Comp. at 1, 4-6).  However, "[a]n action against

15  an officer, operating in his or her official capacity as a United States agent,

16  operates as a claim against the United States."  Ministerio Roca Solida v.

17  McKelvey, 820 F.3d 1090, 1095 (9th Cir. 2016); see also Kentucky v. Graham,

18  473 U.S. 159, 165-66 (1985) ("Official-capacity suits, in contrast, 'generally

19  represent only another way of pleading an action against an entity of which an

20  officer is an agent.'" (quoting Monell v. New York City Dep't of Soc. Servs., 436

21  U.S. 658, 690 n.55 (1978)).  Therefore, plaintiff cannot maintain a Bivens action

22  against the individual defendants in their official capacities.  See Ibrahim v. Dep't

23  of Homeland Sec., 538 F.3d 1250, 1257 (9th Cir. 2008) ("[N]o Bivens-like cause of

24  action is available against federal agencies or federal agents sued in their official

25  capacities."); Consejo de Desarrollo Economico de Mexicali, A.C. v. United States,

26  482 F.3d 1157, 1173 (9th Cir. 2007) ( "'[A] Bivens action can be maintained

27  against a defendant in his or her individual capacity only, and not in his or her

28  official capacity.'  This is because a Bivens suit against a defendant in his or her

14

official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." (quoting Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987))).

Furthermore, to the extent plaintiff seeks injunctive relief requiring governmental action (see Complaint at 23), such relief is not properly sought under Bivens. See Ministerio Roca Solida, 820 F.3d at 1094 ("[R]elief under Bivens does not encompass injunctive and declaratory relief where, as here, the equitable relief sought requires official government action."); Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a Bivens action is an award for monetary damages from defendants in their individual capacities.").

In addition to Bivens, plaintiff also briefly references the FTCA (see Comp. at 3 & ¶ 52; see also Notice at 1), "which waive[s] the sovereign immunity of the United States for certain torts committed by federal employees." Meyer, 510 U.S. at 475-76; Ali v. Federal Bureau of Prisons, 552 U.S. 214, 217-18 (2008). It is unclear exactly what claim, if any, plaintiff may be raising under the FTCA but, in any event, plaintiff cannot state an FTCA claim against the BOP or any of the individual defendants since the "United States is the only proper defendant in an FTCA action." Lance v. United States, 70 F.3d 1093, 1095 (9th Cir. 1995) (per curiam); Kennedy v. United States Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998) (per curiam); see also Federal Deposit Ins. Co. v. Craft, 157 F.3d 697, 706 (9th Cir. 1998) (per curiam) ("The FTCA is the exclusive remedy for tortious conduct by the United States, and it only allows claims against the United States. Although such claims can arise from the acts or omissions of United States agencies, an agency itself cannot be sued under the FTCA." (citation omitted)). Moreover, "the United States . . . has not rendered itself liable under [the FTCA] for constitutional tort claims." Meyer, 510 U.S. at 478; Cato, 70 F.3d at 1110-11; see also Jachetta v. United States, 653 F.3d 898, 904 (9th Cir. 2011) ("Although these claims may be characterized as constitutional torts, they are not actionable

1   under the FTCA because any liability would arise under federal rather than state

2   law.  Accordingly, the FTCA does not provide a waiver of sovereign immunity for

3   these claims.").

4       While the nature of the Complaint's deficiencies necessarily limits the

5   Court's ability to fully address its pleading defects,[7] for all the reasons set forth

6   herein, plaintiff's Complaint must be dismissed with leave to amend.

7       Finally, in his Notice, plaintiff states that he "intends to move this Court [for]

8   leave to proceed anonymously and grant of leave to proceed under such pseudonym

9   [D.D.] and disclose his true identify under seal[,]" and he asks the Court to Order

10   the Clerk of Court "to generate a sealed event, where he could provide all the

11   relevant documents and [a] motion in support thereof, for [the Court's]

12   determination to either grant leave to proceed anonymously or deny it."  (Notice at

13   2).

14       Plaintiff's request to "generate a sealed event" is denied without prejudice.

15   If plaintiff wishes to file any document under seal, he must comply with the Court's

16   Local Rules.  <u>See</u> Local Rule 79-5 (setting forth procedures for filing documents

17   under seal); <u>SGII, Inc. v. Suon</u>, 2021 WL 6752324, *6 (C.D. Cal. 2021) ("'Parties

18   seeking to file documents under seal with this Court must follow the procedures set

19   forth in the Local Rules [C.D. Cal. L.R. 79-5 et seq.].'" (citation omitted; brackets

20   in original)).

21       Since plaintiff has not yet sought leave to proceed anonymously, and as the

22   Court is dismissing his Complaint with leave to amend (and has referred to plaintiff

23   only by his preferred pseudonym in this Order), the Court at this time need not

24   further address whether it is appropriate to allow plaintiff to proceed anonymously.

25

26       [7]That is, the Court will require plaintiff to comply with the Federal Rules of Civil

27   Procedure rather than attempt to guess what <u>Bivens</u> claims plaintiff is attempting to state against
     each BOP officer sued in his or her individual capacity or divine the nature and scope of any

28   possible FTCA claims plaintiff might be bringing against the United States.

Instead, if plaintiff "wishes to maintain anonymity in this action, he must file 'a well-reasoned motion to proceed anonymously' . . . before or contemporaneously with [any] amended [complaint] if he wishes to file that pleading anonymously." Arizona Bd. of Regents v. Doe, 2020 WL 5057628, *2 (D. Ariz. 2020) (citation omitted); see also Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067-69 (9th Cir. 2000) (discussing factors courts consider in determining whether a party has set forth "special circumstances" justifying allowing the party to proceed anonymously in judicial proceedings).

## V.   ORDERS[8]

In light of the foregoing, IT IS HEREBY ORDERED that the Complaint is dismissed with leave to amend and plaintiff's request to "generate a sealed event" is denied without prejudice.

IT IS FURTHER ORDERED that within twenty (20) days of the date of this Order, plaintiff must do one of the following:

1.    File a First Amended Complaint which cures the pleading defects set forth herein;[9] or

---

[8]The Magistrate Judge's orders herein constitute non-dispositive rulings on pretrial matters.  See McKeever v. Block, 932 F.2d 795, 797-98 (9th Cir. 1991) (magistrate judges can dismiss complaints with leave to amend; dismissal of complaint with leave to amend is non-dispositive matter).  To the extent a party disagrees with such non-dispositive rulings, such party may file a motion for review by the assigned District Judge within fourteen (14) days.  See Local Rule 72-2.1.  To the extent a party believes the rulings to be dispositive, rather than non-dispositive, such party has the right to object to this Court's determination that the rulings are non-dispositive within fourteen (14) days.  A party will be foreclosed from challenging the rulings herein if such party does not seek review thereof, or object thereto.

[9]The Clerk is directed to provide plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate plaintiff's filing of a First Amended Complaint if he elects to proceed in that fashion.  Any First Amended Complaint must:  (a) be labeled "First Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the original Complaint – i.e., it must include all claims on which plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of each of the claim(s) for relief (Fed. R. Civ. P. 8(a));

(continued...)

2.     Sign and file the attached Notice of Dismissal which will result in the voluntary dismissal of this action without prejudice; or

3.     File a Notice of Intent to Stand on Complaint, indicating plaintiff's intent to stand on the original Complaint despite the pleading defects set forth herein, which may result in the dismissal of this action based upon such defects.

**Plaintiff is cautioned that his failure timely to file a First Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Stand on Complaint may be deemed plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute and/or for failure to comply with this Order.**

IT IS SO ORDERED.

DATED:  February 22, 2022

_____
                                                /s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

Attachments

_____

[9](...continued)

(d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) for relief; (f) allege specifically what each defendant did and how that individual's conduct specifically violated plaintiff's civil rights; (g) for each claim asserted, specifically identify which defendants are being sued and in what capacity; (h) not add defendants or claims that are not reasonably related to the claims asserted in the original Complaint; (i) include a title naming all the parties (Fed. R. Civ. P. 10(a)); and (j) set forth "each claim founded on a separate transaction or occurrence . . . in a separate count[.]" Fed. R. Civ. P. 10(b).